## SAMUEL P. JONES *et al.* v. THE BOARD OF TRADE OF KANSAS CITY.

1. BOARD OF TRADE—*Grain Inspection—Usurpation of Power — Injunction.* If a board of trade of a city and its officers are assuming and exercising authority not conferred on them by the statute regulating public warehouses and the inspection of grain, there is ample authority in the state, by its public officers, in an appropriate proceeding to prevent the unlawful exercise of power, and compel obedience to the law; but another board of trade, which suffers no particular and substantial injury by the unlawful exercise of power or the non-observance of the law, cannot maintain injunction against the offender.

2. PUBLIC POWERS, *Not for Private Gain.* In conferring public functions upon the boards of trade in the matter of inspecting grain, and authorizing the collection of fees, the legislature did not intend that the powers and privileges conferred should be used for the private gain and profit of such boards.

### *Error from Wyandotte Court of Common Pleas.*

ACTION by the *Board of Trade of Kansas City* against *Samuel P. Jones,* the Argentine Board of Trade Association, and others, for an injunction. Trial before HON. JAMES M. REES, judge *pro tem.* The court found for the plaintiff, and that the Argentine board of trade was not entitled to the relief asked for in its answer, and denied the injunction prayed for by the defendants. They come to this court. The opinion states the facts.

*H. A. Bailey,* and *John A. Hale,* for plaintiffs in error:

We think we have shown conclusively what our rights and privileges under the law are, and claim that they are being constantly and persistently violated by the defendants in error, and ask that they be enjoined from further violation of our rights. High, Inj , § 897. That we are in actual possession and are actually inspecting at the points in question, and have a right to do so, is not denied, but admitted by the pleadings. But defendant in error claims the same right.

High on Injunctions, § 898, says: "Exclusive right must be granted by statute."

That the right of plaintiffs in error is exclusive in their "locality" or "vicinity," is shown by §§ 2, 16, 17, 18 and 25 of the act in question, also by rules 2 and 11 on inspections, and rules 1, 2 and 5 on warehousemen, of the published rules of the state inspector.

High on Injunctions, § 911, says that it must be a franchise or grant of a right over which the government has control, and there must be a consideration for the grant. In this case, the inspection of grain is in the state officer to whom is consigned the supervision of the grain interests of the state, and, in consideration of the grant, the plaintiffs in error are required by law to pay their proportion of the state inspector's salary and the entire salaries of their deputy inspectors and weighmasters. We have no adequate remedy at law, and the granting of the injunction as prayed for would prevent a multiplicity of suits.

We think we have a clear case for the intervention of a court of equity, by injunction, to prevent the injuries complained of, and firmly believe that this court will, upon a hearing and examination of the law, find our interpretation correct, and grant us the relief as prayed for.

*Morgan & Riley,* for defendant in error:

As to the inspection of the warehouse grain, defendant in error stands upon two propositions: The Argentine board, to secure the intervention of a court of equity in its behalf, must possess affirmative rights which are being invaded by defendant in error. The right to inspect grain at a given warehouse is, under the grain-inspection law, confined to the board of trade that has licensed the warehouse in question. The Argentine board has not issued licenses to these warehouses, and, therefore, it may not inspect their grain. This proposition disposes of the claim of the Argentine board of right to an injunction, irrespective of the question as to the

present validity of the licenses heretofore issued by defendant in error.

The second proposition is: The two warehouses in question have been regularly licensed by defendant in error. These licenses have never been revoked by the board, nor relinquished by the warehousemen. They are not rendered invalid nor in any way affected by the organization of the Argentine board at a nearer point, but continue effectual, and the right of grain inspection and general supervision as to these warehouses remains with the original licenser — the Kansas City board. This proposition, also, is alone sufficient to dispose of this branch of the case.

As to the inspection of grain not consigned to warehouses, we state the proposition that the grain-inspection law does not provide for, and has no application to, the inspection of grain not so consigned, and that, therefore, the Argentine board has no affirmative right to inspect this class of grain that can be enforced to the exclusion of defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This is a controversy as to which of the boards of trade shall control and supervise the inspection of grain in the vicinity of Argentine. The action was brought by the Kansas City board of trade against the Argentine board of trade, Sam. P. Jones, and other officers, and in its petition it alleged that it had licensed two public warehouses in the vicinity of Argentine, which licenses were unrevoked, and the deputy inspectors who had been nominated by it had been inspecting grain there and in the vicinity of these elevators and issuing certificates of inspection for more than two years; that the Argentine board of trade had been subsequently organized, had appointed deputy inspectors, and were seeking to compel the warehousemen to relinquish their licenses obtained from the Kansas City board of trade, and supervise and control the inspection of grain in the vicinity of Argentine. It was alleged that the state inspector was coöperating with the Argentine board of trade, and endeavoring to

7 — 52 KAS.

make it impossible for the deputy inspectors nominated by the Kansas City board of trade to inspect grain at that point. It is alleged that prosecutions have been begun against the deputy inspectors nominated by the Kansas City board of trade, and others were threatened, which tended to bring discredit upon the inspectors of the Kansas City board of trade, and resulted in great inconvenience to the public and also to private persons. The prayer of the petition was that Jones be enjoined from attempting to discharge the deputy inspectors, and from filing any complaints or causing their arrest, and that he and the Argentine board of trade be enjoined from interfering with or harrassing the deputy inspectors nominated by Kansas City.

The Argentine board of trade answered, admitting that the Kansas City board of trade had previously issued warehouse licenses to two public warehouses in the vicinity of Argentine, but alleged that it was at a time when there was no duly-organized board of trade at Argentine and nearer to the warehouses than Kansas City. It alleged that, since the issuance of these licenses, the Argentine board of trade had been duly incorporated and organized under the laws of the state; that it had issued licenses to warehouses in the vicinity of Argentine other than the two warehouses to which licenses had been previously issued by the Kansas City board of trade; that it had nominated, and the state grain inspector had appointed, a sufficient number of deputy inspectors to properly inspect all the grain in that vicinity; that it had notified the proprietors of all the public warehouses in the vicinity of Argentine, and nearer thereto than to Kansas City, of its existence, and that deputy inspectors, weighmasters, etc., had been duly appointed and qualified to inspect grain in the manner required by law; and that, notwithstanding the laws of the state provided that it should have the exclusive control of inspecting and weighing the grain in that vicinity, the Kansas City board of trade continues to inspect grain in the two public warehouses above mentioned, and to weigh the same, and is also collecting the fees for such service, thus de-

priving Argentine board of trade from the benefit arising from such inspection and from the fees paid for the same.    It is alleged that the state grain inspector, who is authorized by law to supervise and control the grain interests of the state, and to make such rules and regulations regarding the same as may be necessary to enforce the provisions of law, has made rules defining the jurisdiction of the several boards of trade and the duties of the deputy inspectors, but that these rules have been wholly disregarded by the Kansas City board of trade, and that it still continues to inspect and weigh grain and collect fees therefor in violation of these rules, and in total disregard of the rights of the Argentine board of trade. In its prayer, it asks that the injunction sought by the Kansas City board be denied, and that that board of trade be perpetually enjoined from inspecting or weighing any grain in the vicinity or jurisdiction of Argentine, and from collecting or attempting to collect any fees therefor, and from violating or interfering with defendant's exercise and enjoyment of its exclusive right to inspect all grain in its immediate vicinity.    The individual officers named as defendants made the answer of the Argentine board of trade their own.

In the reply filed by the Kansas City board, it disclaimed any right, and alleged that it had made no attempt, to inspect grain in warehouses which had been duly licensed by the Argentine board, but insisted upon the right to inspect grain in the vicinity of Argentine which was not consigned to any warehouse nor designed for storage, where the owners or consignees of such grain desired or requested such inspection. It also avers that it is entitled to inspect grain consigned to warehouses which it had licensed, where such licenses are unrevoked and in force.    The case was submitted to the court upon the facts disclosed in the pleadings, except that at that time the plaintiff withdrew all demand for relief prayed for in its petition, and the case proceeded to a hearing upon the affirmative claim for relief demanded by the defendant.    The court found in favor of the plaintiff, and that the Argentine

board of trade was not entitled to the relief asked for it its answer, and denied the injunction.

From the admitted facts, it appears that the Kansas City board was first organized and had issued licenses to warehouses in that vicinity, some of which were nearer to Argentine than to Kansas City. For some time, and in connection with the state inspector and other officers, it inspected the grain received at these warehouses. Afterward a board of trade was organized at Argentine, and, with a view of inspecting the grain shipped to or stored in that vicinity, it nominated deputy inspectors and other officers, who were appointed by the state inspector. It then claimed jurisdiction over all grain in store or on track which was nearer to Argentine than to Kansas City. Some of the warehouses in that vicinity obtained licenses from the Argentine board, while others which were previously licensed by the Kansas City board have not done so, and the latter board continues to exercise jurisdiction over such warehouses, and its officers continue to inspect the grain received by them, although the warehouses are nearer to Argentine than to Kansas City, and although the state inspector has made rules which attempt to place these warehouses within the jurisdiction and under the supervision of the Argentine board.

On the part of the Argentine board, it is contended that the purpose and intent of the statute are that warehouses must always be under the jurisdiction of the nearest acting board of trade, and that a warehouse license once regularly issued becomes nugatory upon the organization of a board of trade nearer to the warehouse than that which issued the license.

On the part of the Kansas City board, it is contended that licenses once issued by it in conformity with law to warehouses remain valid and justify the inspection of grain by its officers for an indefinite time, or until the licenses have been revoked or superseded by new licenses voluntarily obtained from the nearer board. It is admitted by the board that a warehouse newly licensed must obtain its license from the

nearer board of trade, whether it is entering upon the business or has been previously licensed and the license revoked. It is also admitted that the proprietors of the warehouses in question may voluntarily surrender the licenses which they obtained from the Kansas City board and obtain licenses from the Argentine board; and that in such event they would be under the supervision of the Argentine board.

Although it is said that an interpretation of the statute as to the rights of these boards and the duties of the inspector is desired by all, the defendant in error has challenged the right of the plaintiffs in error to maintain this action. This challenge prevents an examination of the principal points in controversy between the contending parties. If the Argentine board is correct in its view, it is difficult to see upon what ground it can maintain injunction against the Kansas City board. It cannot invoke injunction unless its private rights are being invaded by the Kansas City board and no other adequate remedy exists. It cannot assume the duties and responsibilities of the state and the public prosecutor, of protecting public interests and securing the punishment of warehousemen and officers who violate the provisions of the statute. Assuming that it is the duty of the warehousemen to obtain licenses from the Argentine board, and to submit to its jurisdiction, in what way does that furnish it grounds for the maintenance of an injunction against the Kansas City board? If the Kansas City board and and its officers are exercising powers not conferred by law, the state may interpose by an appropriate proceeding to prevent the unlawful exercise of power. Granting the position of the Argentine board, the licenses issued by the Kansas City board are of no force or value, and furnish no protection to the warehousemen who hold them. Under the statute, licenses must be obtained for public warehouses from the board having authority to grant the same, and any person who transacts the business of a public warehouseman without obtaining such license is guilty of a public offense, and, upon

conviction, is subject to a fine. (Laws of 1891, ch. 248, § 4.) It is also provided in § 29 of the same act that an inspector or deputy inspector guilty of any neglect of duty or any improper performance of duty shall be guilty of a misdemeanor, and, upon conviction, may be punished by both fine and imprisonment. And it is further provided, in § 40, that, in all criminal prosecutions against warehousemen for a violation of any of the provisions of the act, it is the duty of the county attorney of the county in which the prosecution is brought to prosecute the same to a final issue. If licenses are issued by the Kansas City board of trade without authority, they furnish no protection to warehousemen, and can give the Kansas City board no power to supervise their business or to inspect the grain which they receive. But the fact that the defendants so license and assume to inspect is not an interference with any private right of the Argentine board. The warehousemen may be punished for continuing in the business without competent authority, but if they refuse to take out a license from the Argentine board, it could not, by any action in its own name, compel them to do so. While the state inspector appears to have authority to supervise the inspection of grain throughout the state, the statute nowhere gives him authority to maintain an action in his own name to prevent the improper interference complained of, nor to prosecute and punish those who may have violated the law. These are matters of public concern, and proceedings to test the authority of the boards and officers, and to prevent and punish wrongful interference by them, must be brought in the name of the public by the public officer. The warehousemen would have a right to complain and to resist the wrongful collection of license fees or the unwarranted exercise of control over them by the Kansas City board, but the voluntary payment of such fees and submission to such control can certainly give the Argentine board no affirmative right to maintain this action. If they should obtain void licenses from the Topeka, Wichita, Atchison or Leavenworth boards of trade, and sub-

mit to inspection from their officers, it would take nothing from the Argentine board nor infringe upon its existing private rights.

Considerable is said by plaintiffs in error concerning the benefits and profits arising to them from inspection, and which they have not enjoyed on account of the action of the defendant in error. It is manifest from the provisions of the law that it was not intended as a means of private gain to boards of trade, but the purpose and intention of the legislature evidently was to provide for uniform grades, and for a system of weighing, handling and storage which would prevent fraudulent practices and protect the producer, holder and purchaser of grain. To carry out these provisions, it is provided that boards of trade shall exercise certain public functions, and provision is made for the collection of fees. But it certainly was not intended that more fees should be charged than were necessary to defray the expenses of inspection. The legislature did not contemplate that the boards of trade should use the privilege and authority conferred upon them by the act as a means of private profit and gain to their members. Plaintiffs in error can, therefore, build nothing upon what they term the valuable franchise which the legislature has conferred upon them. If the Kansas City board of trade or its officers are acting in disregard of the law, there is ample power in the state, in an appropriate proceeding by its proper officer to compel obedience to law by any of them, as well as to punish any infraction thereof. But since their alleged violations of the law do not result in any special or particular injury to the Argentine board of trade, it has no right to assume a guardianship over the affairs of state or to maintain injunction against the defendant in error.

2. Public powers, not for private gain.

1. Board of trade—grain inspection—usurpation of power—injunction.

The judgment of the court of common pleas denying the injunction will be affirmed.

All the Justices concurring.